GUILLERMO GONZÁLEZ AGUAYO ET UX., Plaintiffs and Appellants, v. ESTEBAN A. DE GOENAGA, Defendant and Appellee.

No. 6989. Argued February 23, 1937.—Decided March 31, 1937.

*C. del Toro Fernández* for appellants. *Juan B. Soto, Juan F. Soto,* and *Enrique Igaravídez* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Guillermo González and his wife Luz Carazo seek to recover from Esteban A. de Goenaga damages for breach of a contract of sublease of a portion of a house situated on José Celso Barbosa Street. Defendant in turn prays as cross-complainant for the rescission of the contract on the ground that the said spouses had not complied with the conditions of the same.

Plaintiffs allege as a cause of action that in spite of the fact that the defendant had agreed not to devote any part of the building to the business of coffee shop, restaurant, pastry shop, or other similar business, he permitted to be opened to the public on March 25, 1933, in the lower part of said building, another establishment called *"Fuente de Soda Galiñanes,"* in which since that time up to the present, meals, coffee, cigars, cigarettes, fruits, refreshments, and other similar articles comprised in the business of plaintiffs are sold. They further allege that as a result of the opening of this other establishment in the said place, they have suffered damages amounting to $13,157.81.

Defendant in turn alleges that the place in which the soda fountain was opened, was ceded or subleased to Galiñanes by another sublessee, Dinet, who occupied said place by virtue of a contract entered into with plaintiff prior to that executed with the plaintiffs and that the obligation contracted by defendant can not be interpreted in the sense of including

that portion of the building occupied by Dinet prior to the contract entered into with the plaintiff spouses. Defendant also alleges that the sublessees are estopped to claim damages for breach of the contract, because on the date on which, according to the complaint, the defendant had violated the contract, the plaintiffs had already violated the same by failing to give the bond as they had agreed in the contract. The parties had agreed that Consuelo Carazo Glover was to be a solidary surety for the fulfillment by the sublessees of each and every obligation incurred by them, said Consuelo Carazo Glover waiving the benefit of exhaustion and binding her present and future properties to the faithful performance of the obligation. Said lady never gave the bond agreed upon in favor of the defendant.

The lower court dismissed the complaint and sustained the cross complaint by decreeing the rescission of the contract of sublease, without special imposition of costs.

The appellants claim that the lower court erred in refusing to admit in evidence the contract offered by them, improperly holding and in conflict with the document itself, that it was not signed or sealed by the notary nor did it have affixed the corresponding revenue stamp which must be cancelled on each affidavit or declaration of authenticity.

It is also maintained that the lower court erred in requiring from the appellants the presentation of the original contract, when it refused a carbon copy of the same, and in admitting only conditionally, after having refused it, the contract offered by plaintiffs and appellants.

These are the first four errors assigned by appellants directed against the judgment of the lower court.

The record does not show that the appellants took an exception to the decision of the court, if it be true that the latter refused to admit the evidence offered by them. Said appellants offered a copy of the contract of sublease in evidence. The defendant objected to the admission of the copy, among other reasons because the same contained a signature

which was not in the original and which constituted a forgery, and because it lacked the notarial seal. On this point, we copy from the transcript of the evidence as follows:

"Judge: The original is a public document signed before a notary. If the signature of the notary with its internal revenue stamp and notarial seal had appeared in this carbon copy, then it would be admissible. But in this case it does not appear that the notary authorized this copy.

"Plaintiff: It has the notarial seal and the signature of the notary.

"Judge: But it does not have the notarial seal nor is the internal revenue stamp canceled. In these circumstances, the court must require the original document signed before a notary.

"Plaintiff: Does defendant say that he has the original?

"Defendant: Yes, sir, at your disposal. I am going to place it at the disposal of the opposite party."

Plaintiffs then offered in evidence the original contract, which was admitted, and when insisting on presenting also the copy, defendant objected again. We take from the transcript of the evidence the following:

"Defendant: I object. We have the original document which has been offered and admitted for the purpose of proving the basis of the contract. Now a document said to be a copy of the same is also offered. If the opposite party thinks that the former has been forged and it is with the object of proving some item in that respect, then we will not object to its presentation.

"Plaintiff: It is with the object of proving some irregularity.

"Defendant: Then we do not object.

"Judge: The court accepts it for that sole purpose and marks it 'Plaintiffs' Exhibit No. 2.'"

As may be seen, the plaintiffs at no time took an exception to the ruling of the court, which accepted the copy of the contract as evidence in the manner suggested by plaintiffs themselves. The absence of an exception to the decision of the lower court and the conduct of the plaintiffs preclude them from now assigning as errors acts suggested by

them and which they accepted. The errors assigned are non-existent.

In commenting on this evidence, which was offered and admitted to prove a certain irregularity, in accordance with the suggestion of the plaintiffs, the lower court said:

"Both parties agree that the giving of the bond by the plaintiffs was an essential condition of the contract, but, while the defendant claimed that the plaintiffs never gave the bond in question, the latter have tried to prove the contrary by offering in evidence a copy of the contract of sublease, in which the signature of the surety Consuelo Carazo Glover appears.

"In the original contract, however, which was the one which always remained in the possession of defendant, the signature of Mrs. Consuelo Carazo Glover does not appear, and her name has been stricken from the certificate which at the foot of said signatures the notary makes to the effect that said contract was signed before him. So that, there is a discrepancy between the original contract, which has the seal of the notary and the internal revenue stamp canceled, and the copy which was delivered to the plaintiffs and in which no internal revenue stamp was canceled.

"The plaintiffs try to explain this discrepancy, by saying that the contract was drafted in the month of November 1931, and that on said date the plaintiff and Mrs. Luz Carazo, as well as her sister Doña Consuelo, signed the contract, and that Doña Consuelo did not sign the original because the notary indicated that it was sufficient if she signed the copy. The notary Mr. Soto, before whom the contract was signed, states that the contracting parties signed the instrument, but that Mrs. Consuelo Carazo Glover was not present, and that he does not remember even having seen her at any time in his office.

"The explanation offered by the plaintiffs is not satisfactory. We can not imagine that there is a notary so ignorant to think that the signature of a surety is unnecessary in the original contract of sublease which generally is delivered, as it was delivered in this case, to the sublessor, in whose benefit the bond must be issued. It may be admitted that the signature of the surety was not necessary in the copy to be delivered to the sublessor, as the bond is not given for his benefit, and hence, he has no interest in the obligation incurred by the surety. Moreover, if the plaintiff and the surety were

at the same time in the office of the notary, and the plaintiffs signed the copy and the original, we fail to see what purpose was sought, or what great work of the surety was avoided, by only giving one signature instead of two. Furthermore, the copy of the contract in which the signature of the surety appears, was in the possession of plaintiffs. If the contrary had occurred, that is, if the signature had appeared in the copy which was in the possession of the defendant, then such circumstance would bind and prevent him from denying that the surety had signed the instrument, unless he gave satisfactory proof that said signature had been inserted by another person without his consent.''

The comments of the lower court as to the document offered in evidence by the plaintiffs seem to us to be correct and logical. There is involved a private contract which in its nature is authentic, because it was signed before a notary. The defendant kept the original of said contract, which does not contain the signature of Mrs. Consuelo Carazo Glover; the plaintiffs appear to have a copy of said contract, containing the signature of said lady. It is strange that the plaintiffs kept for themselves exclusively the signature of the surety, which was given for the benefit of the defendant, leaving the latter without any evidence to demand the corresponding liability in case the conditions of the contract had not been complied with. If, as the parties admit, the giving of the bond was an essential condition of the contract, how is it possible that the signature of the surety was not affixed to the original of the instrument so that the defendant would be protected in the future? The fact that the defendant signed the document without the same containing the signature of the surety, is explained by his own testimony and the admission of the plaintiffs. When Dr. Goenaga was asked whether the security of Mrs. Consuelo Carazo Glover was a condition of the contract, the plaintiffs admitted that it was, defendant adding that he would not have signed it unless that condition had been agreed to. In view of this admission, the witness was not examined further.

· [2] The lower court agrees with the plaintiffs that the defendant violated the ninth clause of the contract by permitting that a certain part of the building be leased to Mr. Galiñanes to establish there a business similar to that of the plaintiffs. Said ninth clause reads thus:

"It is agreed by this contract that the sublessor will not devote any part of this building to the business of coffee shop, restaurant, pastry shop, or other similar business."

· Defendant offers as a defense that when he contracted with the plaintiffs he had already subleased that part of the building where the said business was established. It can not be presumed that the plaintiffs would have accepted the ninth clause admitting exceptions which would destroy the purpose sought. If defendant contracted an obligation which he was not in a condition to fulfill, the excuse that said clause must not be construed in the sense of including that portion of the building occupied prior to the contract of the plaintiffs, should not be accepted. After admitting the violation of the contract by the defendant, the lower court said:

"Although we have reached the conclusion that the defendant violated the contract by permitting the Galiñanes Soda Fountain to be established in the building, as we have also reached the conclusion that the plaintiffs violated the contract first by failing to give the bond which they admit was essential to the contract, we must reach the conclusion that the plaintiffs have no cause of action against the defendant, for it is a well-established principle of the law of contracts that in order that a party may claim damages for breach of a contract, it is indispensable for him to prove that he complied in full with his obligations under the contract. Our Supreme Court has so held repeatedly, especially in the cases of *Palacios* v. *Arzuaga,* 37 P.R.R. 270; *Portela* v. *Porto Rican American Tobacco Co.,* 4 P.R.R. 29; and *Estate of Iglesias* v. *Bolívar,* 11 P.R.R. 422."

The above doctrine is supported also by the American decisions. In the case of *Londenback Fertilizer Co.* v. *Tennessee Phosphate Co.,* 61 L.R.A. 402, 407, the court said:

"The plaintiff, by the facts stated on the face of the declaration, shows that it committed the first substantial breach of the contract . . . If there is anything well settled it is that the party who commits the first breach of the contract cannot maintain an action against the other for a subsequent failure to perform. The plaintiff has not kept the contract, and shows no excuse for his breach. It does not, therefore, show any such performance on its own part as to entitle it to demand that the defendant shall go on and perform, or pay damages for a subsequent refusal to recognize the contract as in force."

 Regarding the cross complaint, the lower court decided that since it was shown that the plaintiffs had violated the contract prior to the violation by defendant, by failing to give the bond which they themselves admit they were bound to give, the contract must be held to be rescinded. The lower court cites the judgment of the Supreme Court of Spain of July 9, 1904, which holds that where one of the parties violates the contract, the other party can request the rescission thereof, and that the fact that the plaintiff subsequently failed to comply with his obligations is no obstacle, as the conduct of the former gives rise to the right of the latter and relieves him from that moment of his obligations. The rescission of the contract at the option of the sublessor, in case the sublessees violated any of the clauses, conditions, or terms of the contract, was a thing agreed to by the parties. It was also agreed that the bond was an essential element of the contract. The defendant testified that he would not have signed it unless such a thing had been agreed. Hence, the rescission conforms to the agreement made by the parties which is the law of the contract.

The judgment appealed from must be affirmed.